Legal Mail
Received

SEP 27 2019

Dade C.I.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**DADE COUNTY DIVISION**

FILED BY _PG_ D.C.

OCT 01 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

cat / div _550/1983/MIA_
Case # _____
Judge _____ Mag _REID_
Motn Ifp _YES_ Fee pd $ _0_
Receipt # _____

**SCOTTY SANTOS DIAZ,**
    Plaintiff,

v.                                          Case No: _____

                                            TO BE ASSIGNED

**CENTURION OF FLORIDA, LLC/MEDICAL CONTRACTOR**
**DR. DELGATO, M.D./ DADE C. I.**
**DR. F. PAPILLON, CHIEF HEALTH OFFICER / DADE C. I.**
**L. RE.. MOLINA, P.A. / DADE C.I.**
**MR. LAFONT, PHARMACIST / DADE C.I.**
**MR. M. CORRALES, ASSISTANT WARDEN / DADE C.I.**
**MR. MARK INCH, SECRETARY / F.D.O.C.**

                                                                    /

    Defendants

## COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983

Plaintiff Scotty Santos Diaz, hereinafter "Plaintiff" or "Diaz", pro-se, pursuant to 42 U.S.C. 1983,   files this complaint against Defendants, Centurion of Florida, LLC., a health care provider (hereinafter "Centurion"), Dr. Delgato, M.D. in his official and individual capacities (hereinafter "Delgato"), Dr. F. Papillon, Chief health Officer, in his official and individual capacities (hereinafter Dr.

Papillon"), L.Re. Molina, P.A., Physicians Assistant in her official and individual capacities (hereinafter "Molina"), Mr. Lafont, Pharmacist in his official and individual capacities (hereinafter "Lafont"), Mr. M. Corrales, Assistant Warden, in his official and individual capacities (hereinafter, "Mr. Corrales"), Mr. Mark Inch, Secretary, Florida Department of Corrections, in his official and individual capacities, (Hereinafter "Mr. Inch").

## PRO-SE LITIGANT STATEMENT

This complaint was prepared by inmate assistance due to the Plaintiff's current medical condition. **"Severe Primary Open-Angle Glaucoma" "Severe Stage."**

However, an inmate law clerk is prohibited from representing another inmate in a judicial proceeding pursuant to: Chapter 33 of the Florida Administrative Code. See Ch. 33-501.301(i)(1)(2).

The Plaintiff's vision is impaired due to Severe Primary Open-Angle Glaucoma.

Due to the unnecessary and unwarranted delay in adequate medical treatment the Plaintiff has Extremely low vision in his left eye, and is totally blind in his rigt eye.

2

The condition the Plaintiff is now in is due in part by the unwarranted delay in dispensing Diaz's Glaucoma medication in a timely manner.

The Plaintiff prays this Honorable Court will take into consideration his medical condition and appoint counsel due to exceptional circumstances. "Due to the Plaintiff's impaired vision which has hindered his ability to properly litigate."

The Plaintiff submits this complaint as a pro-se litigant unskilled in the science of law and wishes his complaint and entreaties to this Honorable Court to be received as such. The Plaintiff moves this Court not to let or permit form to override substance or procedural technicalities to defeat [Fairness] and [Justice] in that the Court treat this complaint as whatever vehicle needed for the relief that the court deems just and proper. The Court stated in hall v. bellman, 935 F.3d 1106,. 1110 (10th Cir. 1991)

> "A pro-se litigants pleadings are to be construed and held to a less stringent standard then formal pleadings drafted by lawyers…if a court can reasonably read the pleadings to state a [valid claim] on which plaintiff's failure to cite a proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." (Citation Omitted) See also: Boag v. McDougal, 454 U.S. 363 (1982); Haines v. Keener, 404 U.S. 519 (1972); Gangloff v. Palm Springs hospital, 657 F.Supp. 739 (S.D. Fla. 1986)

## **INTRODUCTION**

1.        This is an action for compensatory and punitive damages alleging that the Defendants, contrary to the Eighth and fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference to the recognized rights of the plaintiff Mr. Scotty Santos Diaz while he was incarcerated at Dade Correctional institution, beginning on November 7, 2018.

## **JURISDICTION**

2.        Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and Laws of the United States.

3.        Jurisdiction is also invoked pursuant to 28 U.S.C. § 1343 (a)(3), in that this action seeks to redress the deprivation, under color of state law, of the rights secured to Diaz by the Eighth and fourteenth Amendments to the United States Constitution.

4.        Plaintiff's claims for relief are predicated on 42 U.S.C. 1983, which authorizes actions to redress the deprivation, under Color of State Law, of

Rights, Privileges and Immunities secured to the Plaintiff by the Constitution and Laws of the United States and by 42 U.S.C. § 1988, which authorized the awarded of attorney fees and cost to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

## PARTIES

5.     Plaintiff, Scotty Santos Diaz (hereinafter "Diaz"), at all times material to this action was a resident of Dade County, Florida, incarcerated at Dade Correctional Institution.

6.                     **THE DEFENDANTS ARE:**

A. DEFENDANTS NAME: Centurion of Florida, LLC
   OFFICIAL POSITION:  Health Care Provider
   EMPLOYED AT:
   MAILING ADDRESS:  7700 Forsyth Blvd. St. Louis, MO. 63105

B. DEFENDANTS NAME: Dr. Delgato, M.D.
   OFFICIAL POSITION:  Medical Doctor
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS:  19000 S.W. 377th Street, Florida City, Fl. 33034

C. DEFENDANTS NAME:  Dr. F. Papillon
   OFFICIAL POSITION:  Chief health Official
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS:    19000 S.W. 377th Street, Florida City, Fl. 33034

5

D. DEFENDANTS NAME:  L. Re. Molina, P.A.
   OFFICIAL POSITION:  Physicians Assistant
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS:    19000 S.W. 377th Street, Florida City, Fl. 33034


E. DEFENDANTS NAME:  Mr. Lafont
   OFFICIAL POSITION:  Pharmacist
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS:    19000 S.W. 377th Street, Florida City, Fl. 33034


F. DEFENDANTS NAME:  Mr. M. Corrales
   OFFICIAL POSITION:  Assistant Warden
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS:    19000 S.W. 377th Street, Florida City, Fl. 33034


G. DEFENDANTS NAME:  Mr. Mark inch
   OFFICIAL POSITION:  Secretary F.D.O.C.
   EMPLOYED AT:        Office of the Secretary
   MAILING ADDRESS:    501 South Calhoun Street, Tallahassee, Florida 32399


## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Exhaustion of Administrative Remedies is requires prior to pursuing Civil Rights Actions, 42, U.S.C. § 1997 E (A). The Plaintiff has exhausted every issue in the following complaint and therefore has satisfied the requirements of the (PLRA) Prison Litigation Reform Act as well

6

## STATEMENT OF FACTS

1.      On November 7, 2018 the Plaintiff Scotty Santos Diaz was transferred to Dade Correctional institution due to Status and Classification. RE: <u>Vision Impaired</u>.

2.      Prior to the Plaintiff's transfer he was seen and evaluated by Dr. John A. Beneke, a Board Certified Glaucoma Specialist employed by Magruder Eye Institute located in Orlando Florida.

3.      Dr. Beneke prescribed the following post operative treatment plan to maintain elevated (IOP) levels and to prevent any further loss of vision and optic nerve damage.

4.      Dr. Beneke ordered the prescription of: Timolol Maleaet to treat Intra Ocular Pressure (IOP), Prednisolon Solution to treat pain due to elevated (IOP) levels and Bausch and Lomb Advanced Eye Relief to treat Dry Eye Syndrome. It was further ordered that he Plaintiff receive periodic (IOP) checks to monitor elevation of pressure.

5.      On November 7. 2019 the Plaintiff was advised by L.P.N. K. Auguste an intake Nurse, to place his medication refill slips into the K.O.P. window located at the Pharmacy.

6.     The Plaintiff had not received any of the medication for several weeks and began writing several grievances alleging that he was experiencing pain and blurry vision and had no medication to treat his Glaucoma.

7.     On December 18, 2018 the plaintiff was seen by Medical for the first time since arriving to Dade C. I.

8.     The Plaintiff was seen by L. Re. Molina P.A... During the appointment with Molina on December 18, 2018 the Plaintiff was told by Molina that he was not blind in his right eye. Then Molina refused to renew the Plaintiff's medical passes for his (ADA) appliances previously prescribed by both Medical Doctors and board Certified Glaucoma Specialist. Molina then discontinued the Plaintiff's following eye drops: Prednisolon and Bausch and Lomb Advanced Eye Relief. **NOTE:** Molina is a Physician's Assistant and without prior approval by a Medical Doctor has no authority to alter a Medical Doctors previously prescribed treatment.

9.     On January 30, 2019 after the Plaintiff had filed several more grievances he was finally seen by his primary care physician, Dr. Delgato. The Plaintiff advised Delgato of the appointment with Molina on December 18, 2018. The Plaintiff advised Dr. Delgato that he had not received any Glaucoma eye drops in approximately three months. The Plaintiff advised Delgato that Molina took all his (ADA) passes and appliances, such as,

8

White Cane/Tap Stick, Straw Hat, Sunglasses and Boots. The Plaintiff advised Delgato that Molina discontinued two of his three prescribed medications. The Plaintiff advised Delgato of the pain and blurry vision due to the Department not dispensing his Glaucoma eye drops.

10.     After all the Plaintiff's pleadings with Delgato he was advised that his eye drops would be prescribed and Delgato renewed one pass, (Low Tier).

11.     Delgato advised the Plaintiff on January 30, 2019 that his eye drops would be available at the pharmacy window within 3 to 5 days and soon after would be seen by Optometry for an (IOP) check and evaluation.

12.     On February 5, 2019 the Plaintiff was seen by the optometrist, an evaluation and (IOP) check was conducted and the following results and recommendations were brought to the attention of Diaz primary care physician. The Intra Ocular Pressure, (IOP) in Plaintiffs left eye was (18) and the right eye was (58).

13.     Due to the substantial elevation in Diaz's eyes the Optometrist ordered that Diaz's doses of Glaucoma eye drops be doubled and that Diaz be seen for follow-up exam in (30) days.

14.     The Plaintiff waited several days to receive his eye drops and again nothing was dispensed as ordered by Optometry. The Plaintiff again began filing a flurry of grievances alleging that he had not received any of his

9

Glaucoma medication since his arrival to Dade C.I. on 11-7-18. The Plaintiff explained in depth that his eyes were in severe pain and his vision had become very blurry, "All To No Avail".

15.     On/or about March of 2019 the Plaintiff was seen again by Dr. Delgato. Diaz advised Delgato once again that no medication had been dispensed and that every time he spoke to the Pharmacist, Lafont would advise him that he had no eye drops. The Plaintiff then asked Delgato why he had not been seen by optometry for follow-up as per the order and consult on February 5, 2019.

16.     Delgato reviewed Plaintiff's medical file and found that the consult submitted by optometry had never been signed nor submitted for approval. Dr. Delgato then had the Plaintiff sign an urgent consult to be seen by Ophthalmology.

17.     After the Plaintiff filed several more grievances alleging that he had not received any of his Glaucoma medication it was brought to the Plaintiff's attention via-responses made by both medical and D.O.C. staff, that Diaz was not showing up to his call-outs

18.     Immediately Plaintiff submitted request for copies of the medical records needed to substantiate that he did [IN-FACT] show up to all of his call-outs. NOTE: The Plaintiff was unable to obtain the pass for-

10

appointment documents due to the improper distribution and destruction of said records. The Plaintiff then requested Mr. Lafont to sign the pass-for appointment call-out as required and Mr. Lafont refused to do so. The Plaintiff then submitted multiple grievances alerting the Department of Correction, Centurion and the Secretary that records that are created to record events were being destroyed, and that the Pharmacist Mr. Lafont was dispensing prescription medication to the entire inmate population without inmates signing for the medication as required by policy and procedure.

19.    On April 17, 2019 the Plaintiff was seen again by Optometry. NOTE: this appointment took place (70) days after Optometry ordered that the Plaintiff be returned for follow up in (30) days on February 5, 2019. The Optometrist performed another (IOP) check and the results were as follows: The Plaintiff's (IOP) level in his left eye had increased from (18) to (32) and the right eye was still in the (50's).

20.    The Plaintiff advised the Optometrist that the medical department was not following her orders for prescribed medication. NOTE: The Optometrist submitted an urgent consult for Plaintiffs to be seen by an Ophthalmologist and ordered that he Plaintiff be prescribed Xalatan as an addition to his current prescriptions.

11

21.     On April 22, 2019 the Plaintiff declared a medical emergency because of severe pain and blurry vision. Diaz explained to medical that Optometry prescribed Xalatan on April 17, 2019 and he had not received it. The nurse advised Diaz that his order would be placed today and that Diaz could pick it up at the Pharmacy on the 24th of April 2019.

22.     On April 25, 2019 at 2:30 P.M. the Plaintiff declared another medical emergency again due to pain and blurry vision. "At first Sgt. Martin denied Diaz access to medical and told Diaz that his Glaucoma is not life threatening," however, Diaz told Sgt. Upshaw, and Sgt. Upshaw contacted medical and was advised to send Diaz to medical immediately.

23.     Diaz explained to the nurse that he has been without his Glaucoma eye drops since November of 2018, and that both Doctor Delgato and Ms. Lang from Optometry had ordered and prescribed Xalatan, Prednisolon, Timolol and ?Bausch and Lomb Advanced Eye Relief.

24.     After a lengthy search the nurse was able to locate two of the four bottles of eye drops, (1) Timolol and (1) Prednisolon.

NOTE: The above mentioned eye drop, Timolol and Prednisolon are the [first] two bottles of Glaucoma medication the plaintiff received since being transferred to Dade C.I. on November 7, 2019 approximately 5½ months

earlier. The nurse was unable to locate the other two medications and advised Diaz she would make a note for Pharmacy

25.     On May 3, 2019 Diaz went to the annual (ADA) meeting and advised the Warden, Ms. Tate and all other representatives from Centurion and the Department of Corrections that critical medical records, RE: pass for appointments were being destroyed and that the Pharmacist "Lafont" was dispensing prescribed medication without the inmates signing the receipt for said medication thus creating an inaccurate record of events and most importantly violating Policy and Procedure.

26.     On May 14, 2019 Counsel for Centurion was made aware that Diaz was going to file an Injunction with the U.S. Dist. Court. On May 15, 2019 the following day Diaz was transported to Larken Eye Clinic for an evaluation and (IOP) check. NOTE: <u>Multiple stitches were removed from Diaz left eye</u>.

27.     Both Ophthalmologist's performed several procedures and ordered that the Plaintiff be prescribed Cyclopentolate Hydrochloride Opthalmic Solution for pain caused by Elevated Intra Ocular Pressure that the Plaintiff had been suffering from for a period of (5½) months. This directly due to Diaz not having the medication to treat these conditions. On July 1, 2019 Plaintiff went to Sick-Call and advised the nurse that the Cyclopentolate was

causing allergic reactions having him to break out and become sick and vomiting. Dr. Peno advised Diaz to tell the specialist when you see him again. This is the responsibility of the medical department, "Not the Plaintiff."

28.     Both Ophthalmologist noticed something irregular in the Plaintiff's left eye and were unable to determine the nature at that time. Ex-Rays and visual fields were also conducted.

29.     The Ophthalmologist ordered that the Plaintiff receive (IOP) checks every month by Optometry on location and be returned to Larken for follow-up in (90) days. NOTE: <u>It was also ordered on May 15, 2019 by the Glaucoma Specialist that if the (IOP) elevated above (14) in Diaz's left eye the Plaintiff should be returned to Larkin Hospital A.S.A.P.</u>, The Plaintiff did not receive an IOP check again until July 8, 2019 approximately (53) days later, the Plaintiff's Intra-Ocular pressure had elevated to (28) in his left eye causing him great pain and discomfort. The (IOP) was now double the elevation that he Ophthalmologist had ordered that the Plaintiff be returned [ASAP] "As Soon As Possible."

30.     NOTE: When a patient/inmate returns from an outside medical consult and there has been orders recommended for treatment and medication the inmate [must] be seen by his Primary Physician to discuss

the course of the patient's medical evaluation, treatment, and change in condition.

31.     The Plaintiff at this current time during the preparation of this petition, has yet to be seen by his primary physician.

32.     On May 21, 2019 Diaz declared another medical emergency due to the pain and blurry vision in both his eyes. The Plaintiff was seen by nurse "Roche" and explained to nurse Roche that on May 15, 2019 he was transported to Larkin Eye Clinic, received multiple procedures and when he returned to the institution was never seen by the Doctor. Ms. Roche took Diaz's medical file to Dr. Delgato to verify what Diaz had said, and when Nurse Roche returned she told Diaz that Dr. Delgato advised that Diaz access sick-call if he was feeling bad.

33.     The Plaintiff Diaz was not seen by Optometry for an (IOP) check, "until July 8, 2019 at which time the Intra-Ocular pressure had elevsated significantly."

34.     The Plaintiff has suffered further irreversible damage to the optic nerves in both eye's, has lost significant amount of vision and been subjected to extreme pain. All of these symptoms directly due to medical and securities failure to timely treat the Plaintiff's serious medical condition or adhere to the specialist orders in a timely manner.

35.    Documented records will in-fact substantiate that Diaz went a period of 5 ½ months without any of the prescribed medication that was ordered by Glaucoma Specialist to "Prevent" any further loss of vision, and further elevated (IOP) levels and to control pain.

36.    Both Centurion their agents and employees the Florida Department of Corrections their agents and employees who have participated in the Plaintiff's medical treatment have shown deliberate indifference to the Plaintiff's pre-diagnosed serious medical needs, thus violating Diaz's Eighth and Fourteenth Amendments to the United States Constitution.

## IN CONCLUSION

37.    The Plaintiff alleges that due to the 5 ½ month delay in treating his serious medical needs. RE: (1) Failure to timely prescribe and dispense Glaucoma medication as ordered by the specialist, (2) Failure to seek and/or consult with an outside specialist in a timely manner, (3) Failure to properly issue and record the distribution of K.O.P. Medication pursuant to the Policy and Procedure that govern such actions, (4) Failure to properly create a record of events in order to protect the legal interest of all parties involved,

16

and (5) the complete disregard and destruction of records that are provided to create and maintain sufficient information to identify the patient, support the diagnosis, "Justify the treatment and document the course and results of the treatment accurately. See Rule 64B8-9.003, F.A.C.

As a direct and proximate result of the above mentioned defendants deliberate indifference toward Diaz's serious medical needs, the inadequate treatment and/or "unnecessary delay" in the treatment of Diaz's sever stage Glaucoma, Diaz suffered further damage to the optic nerves, pain, discomfort, substantial loss of more vision in his left eye, thus violating Diaz's Eighth and Fourteenth Amendment Rights not to be subjected to such cruel and unusual punishment. NOTE: Prior to the Plaintiff being transferred to Dade C.I. for post operative treatment his (IOP) levels were acceptable in both eye's, Pain management was at minimal. Now due to the (4½) to (5) month delay in dispensing the Plaintiff's previously prescribed Glaucoma Medication as well as the unnecessary delay in follow-up treatment by an Ophthalmologist as the Plaintiff's medical condition would require, "His Severe Stage Glaucoma has been diagnosed as uncontrolled." The Plaintiff was advised by the clinic that the possibility of removing his right eye may be forthcoming due to the uncontrolled (IOP) levels.

17

## CAUSES OF ACTION

## COUNT I – 42 U.S.C. § 1983 CLAIM AGAINST CENTURION

38.     Diaz Hereby Incorporates by reference the allegations contained in paragraphs 1 through 37 above; as if set forth in full herein.

39.     Count (I) is brought against Defendant Centurion pursuant to 42 U.S.C. Section 1983 for deliberate indifference to the critical medical needs of Diaz, as an individual with a primary Open Angle Glaucoma Abnormal-to-sever medical condition that required the previously prescribed treatment plan recommended by Dr. John A. Beneke to prevent any further substantial health deterioration, pain and loss of vision.

40.     Centurion and/or its agents or employee's, knew on November 7, 2018 that Diaz had Primary Open Angle Glaucoma Abnormal to sever condition and that if the condition was not adequately monitored and treated it could result in serious irreparable harm, pain and even loss of sight.

41.     By December 18, 2018 Centurion and/or its employees or agents, knew Diaz was not receiving the medication prescribed to prevent any further loss of vision, pain and/or deterioration in both eyes.

42.     Despite knowledge of Diaz's serious medical needs, Centurion and/or its employees and agents were deliberately indifferent to those serious medical needs in failing to provide the necessary medication care and

18

treatment to Diaz in a timely manner as previously prescribed by a board certified Glaucoma specialist and certified Optometrist.

43.    Centurion and/or its employees or agents knew that taking no action and/or insufficient action could result in the rapid and permanent deterioration of Diaz's health, pain and further loss of vision in both eyes.

44.    At all times relevant to this complaint, it was Centurion's widespread custom, policy, practice and/or procedure to outright deny medical treatment for or be deliberately indifferent to the serious medical needs of Plaintiff and other prisoners/detainees incarcerated within Dade Correctional Institution, who had serious and potentially expensive medical problems.

45.    As a direct and proximate result of Centurion's institutional delay and/or denial of medical treatment and/or deliberate indifference towards Diaz's serious medical needs, the timely and inadequate treatment of his Glaucoma, Diaz suffered significantly more damage to the Optic Nerves due to elevated (IOP) levels, pain, discomfort mental anguish and a substantial loss of more vision in his left eye in violation of Diaz's Eighth and Fourteenth Amendment Rights.

46.    As a result Diaz suffered damages in an amount to be determined at trial for his injury resulting pain and suffering, disability, probable disfigurement due to the possible removal of his right eye, mental anguish,

loss of capacity for the enjoyment of life, expenses for his care and treatment in an effort to alleviate and cure his injuries, and will continue to incur additional expenses in the future, loss of earnings, loss of ability to earn money. The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future. Diaz also seeks reasonable attorney fees and cost, pre-judgment interest and further relief as the court deems appropriate.

## COUNT II – 42 U.S.C. § 1983 CLAIM AGAINST DR. DELGATO

47.     Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 37 above, as if set forth I full herein.

48.     Diaz charges that Dr. Delgato, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to provide necessary and recommended care and treatment in a timely manner to Diaz after January 30, 2019 by not assuring that Diaz receive the Glaucoma medication previously prescribed by a Glaucoma specialist to prevent any further damage to Diaz's eye's, "such as Elevated Intra Ocular Pressure (IOP), pain, discomfort or loss of vision. Even after Delgato was advised by Optometry on February 5, 2019 that Diaz's (IOP) was elevated way above normal Diaz was not seen by an Ophthalmologist till May 15, 2019 approximately (3 ½)

months later. Dr. Delgato denied Diaz medical care by an outside specialist "In a timely manner" as Diaz condition would clearly require, purely for economic reasons.

49.     This failure to take timely action by Dr. Delgato was an exercise of deliberate indifference to the health, safety and welfare and the Constitutional Rights of Diaz under color of State law.

50.     Dr. Delgato, with full knowledge of the unconstitutional nature of his actions, agreed to and did exercise deliberate indifference to the safety and health of Diaz which eventually resulted in further optic nerve damage to both eyes, Elevated Intra Ocular Pressure, substantially diminished vision in his left eye to highly elevated (IOP) levels through the course of neglect from November 7, 2018 until Diaz was seen by an Ophthalmologist on May 15, 2019.


**COUNT III – 42 U.S.C. § 1983 CLAIM AGAINST DR. F. PAPELLON**

51.     Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 37 above, as if set forth in full herein.

52.     At all times relevant, Dr. F. Papillon was the Chief Health Officer employed by the Florida Department of Corrections at Dade Correctional institution.

53.     Diaz charged that Dr. F. Papillon, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to ensure that his staff provided Diaz with the necessary and recommended care and treatment in a timely manner after being advised that Diaz was not receiving the treatment recommended to prevent any further damage and/or injury. Dr. Papillon had an ethical responsibility to ensure that Diaz received the proper care and treatment pursuant to the policies of Centurion to deny medical care for purely economic reasons. Specifically, by failing to recommend or refer Diaz to an outside Glaucoma specialist in a timely and expeditious manner as his condition would require, even though Dr. Papillon was aware of the prior diagnosis by Optometry on February 5, 2019.

54.     This failure to take action by Papillon was an exercise of deliberate indifference to the health, safety and welfare and Constitutional rights of Diaz under color of State Law.

55.     Dr. F. Papillon, with the full knowledge of the unconstitutional nature of his actions, agreed to and did exercise deliberate indifference to the safety and health of Diaz which eventually resulted in further optic nerve damage to Plaintiff's left eye and the probability of the removal of Diaz right eye due to the severe pain caused by highly elevated (IOP) levels through the course

22

of neglect from November 7, 2018 until Diaz was seen by an Ophthalmologist on May 15, 2019.

## COUNT IV – 42 U.S.C. § 1983 CLAIM AGAINST L. RE. MOLINA P.A.

56.     Diaz hereby incorporates by reference the allegations contained in paragraphs1 through 37 above, as if set forth in full herein.

57.     At all times relevant, L. Re. Molina P.A. was the physician's assistant employed by the Florida Department of Corrections at Dade Correctional Institution.

58.     Diaz charges that L. Re. Molina P.A., contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised Deliberate Indifference by failing to provide medical care and treatment in a timely manner to Diaz after December 18, 2018.

59.     The failure to take action and adhere to the Plaintiff's previously prescribed treatment recommended by a Board Certified Glaucoma Specialist by L. Re. Molina P.A. was an exercise of deliberate indifference to the health, safety and welfare and Constitutional Rights of the Plaintiff under color of law.

60.     L. Re. Molina P.A. with the full knowledge of the Unconstitutional nature of her actions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

## COUNT V – 42 U.S.C. § 1983 CLAIM AGAINST MR. LAFONT

61.     Diaz hereby incorporates by reference the allegations contained in paragraphs 1 thorough 37 above, as set forth in full herein.

62.     At all times relevant, Mr. Lafont was the pharmacist employed by the Florida Department of Corrections at Dade C. I.

63.     Diaz charges that Mr. Lafont, contrary to the Eighth and Fourteenth Amendments to the United States Constitution knowingly and willfully exercised Deliberate Indifference by failing to follow Policy and Procedure in the distribution and recording of Diaz's Glaucoma eye drops.

64.     The failure to dispense and properly record K.O.P. medication by Lafont was an exercise of Deliberate Indifference to the health, safety, welfare and Constitutional Rights of the Plaintiff under the color of State law.

65.     Mr. Lafont with the full knowledge of the Unconstitutional nature of his actions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

24

## <u>COUNT VI – 42 U.S.C. § 1983 CLAIM AGAINST M. CORRALES</u>

66.     Diaz hereby incorporates by reference the allegations contained in paragraphs 1 thorough 37 above, as set forth in full herein.

67.     At all times relevant Mr. Corrales was the Assistant Warden of Programs employed by the Florida Department of Corrections at Dade Correctional Institution.

68.     Diaz charges that Mr. Corrales, contrary to the Eighth and Fourteenth Amendments to the United States Constitution knowingly and willfully exercised Deliberate Indifference by failing to ensure that his staff follow and adhere to the Policy and Procedure in the proper distribution and recording of (D.O.C.) and medical records.

69.     The failure to correct these violations of Policy and Procedure after Corrales was made aware of these violations; was an exercise of Deliberate Indifference to the Plaintiff's need for the requested records, and Constitutional Rights under the color of State law.

70.     Mr. Corrales with full knowledge of the Unconstitutional nature of his actions and/or inactions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

## COUNT VII – 42 U.S.C. § 1983 CLAIM AGAINST MARK INCH

71.     Diaz hereby incorporates by reference the allegations contained in paragraphs 1 thorough 37 above, as set forth in full herein

72.     At all times relevant, Mr. Mark Inch was the Secretary for the Florida Department of Corrections employed by the State of Florida in Tallahassee Florida.

73.     Diaz charges that Mark Inch contrary to the Eighth and Fourteenth Amendments to the United States Constitution knowingly and willfully exercised Deliberate Indifference by failing to ensure his staff and/or agents adhered to the Policy and Procedure at Dade Correctional Institution.

74.     By failing to ensure the employees, staff and/or agents adhered to Policy and Procedure at Dade Correctional Institution by Mr. Mark Inch was an exercise of Deliberate Indifference and violation of Diaz's Constitutional Rights under the color of law.

75.     Mark Inch with full knowledge of the Unconstitutional nature of his actions and/or inactions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Scotty Santos Diaz, respectfully prays this Honorable Court for entry of Judgment awarding him the following relief:

A.   A declaration that the acts and omissions of the Defendants described herein violated Diaz's Eighth and Fourteenth Amendment protection from cruel and unusual punishment through Deliberate Indifference.

B.   Compensatory damages in the amount of $25,000 against Defendant Centurion.

C.   Compensatory damages in the amount of $10,000 against each named Defendant in their individual capacities

D.   Punitive damages in the amount of $10,000 against Defendant Centurion.

E.   Punitive damages in the amount of $10,000 against each named Defendant in their Individual capacities.

F.   Recovery of all fees and costs of this action

G.   Any further relief this Honorable Court deems just, proper and equitable.

Plaintiff respectfully demands a trial on all issues so triable.

Respectfully Submitted

/s/ _Scotty S. Diaz_

Scotty Santos Diaz

## **VERIFICATION**

I AFFIRM UNDER PENALTY OF PERJURY THAT THE FOREGOING DOCUMENT IS TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE, INFORMATION AND BELIEF.

Respectfully Submitted

Scotty Santos Diaz
Dade Correctional Institution
19000 S.W. 377th Street
Florida City, Fl. 33034

28

Scotty Santos Díaz, #670614
Dade Correctional Institution
19000 S.W. 377 Street
Florida City, FL. 33034

LEGAL
== MAIL ==

Hasler
09/27/2019
US POSTAGE $008.30⁰
MAILED FROM A
STATE CORRECTIONAL
INSTITUTION
FLORIDA CITY
ZIP 33034
011E11681778

U.S. MIS INSPECTED

Legal Mail
Received
SEP 27 2019
Dade C.I.
S.D

TO: CLERK OF THE U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
DADE COUNTY DIVISION
400 NORTH MIAMI AVE., (8TH FLOOR)
MIAMI, FLORIDA. 33128 - 7716