**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
DADE COUNTY DIVISION**



**SCOTTY SANTO DIAZ,**
  **Plaintiff,**

                                    **CASE NO.: 1:19-CV-24067-UU/LMR**

**vs.**



**Dr.DELGATO, ET AL.,**
  **Defendants.**
_____/

**MOTION FOR LEAVE TO AMEND
AND
REQUEST TO RECONSIDER TERMINATING
CENTURION WITHOUT FIRST REVIEWING
PLAINTIFF'S AMENDED COMPLAINT**

**COMES NOW** the Plaintiff, <u>Scotty Santos Diaz</u>, Pro se pursuant to Federal

Rules of Civil Procedure 15(A)(2) and this Honorable Court's order issued on July

7, 2020 respectfully request both leave to amend, and the reconsideration of

terminating Centurion without first reviewing Plaintiff's amended complaint and as

grounds thereof submits the following:

**<u>GROUNDS RELIED UPON</u>**

1.    The Plaintiff filed his original complaint on/or about September 27, 2019.

2.    First Plaintiff request leave to amend as a matter of course, pursuant to, Fed.

R. Civ. P. 15(1).

3.      On March 18, 2020 the Honorable Magistrate Judge Reid issued a report recommending the Plaintiffs complaint proceed against Defendants, Molina and Lafont in their individual capacities, as Plaintiff had plead plausible claim for deliberate indifference.

4.      The Honorable Judge Reid further recommended that, Delgato, Papillon, Corrales, Centurion and Mr. Mark Inch be dismissed.

5.      On May 4, 2020 Plaintiff filed objections to Judge Reid's report.

6.      On May 19, 2020 the Honorable U.S. District Court Judge Ursula issued an order, adopted in part that Plaintiffs case shall proceed against (1) Dr. Delgato; (2) Dr. Papillion; (3) L.Re. Molina, P.A.; (4) Mr. Lafont; (5) Mr. Corrales; and (6) Mark S. Inch, in their individual capacities for compensation and punitive damages.

7.      The Honorable Judge further ordered that Centurion be terminated as a Defendant. **NOTE**: This decision to terminate Centurion was made prior to the courts review of Plaintiffs amended complaint.

8.      The Plaintiff avers that review of his amended complaint will in fact demonstrate that he has plead a plausible claim against Centurion for deliberate indifference toward his serious medical needs.

9.      Plaintiff's amended complaint will be based upon events that have occurred since the original filing of his civil complaint.

10.   Plaintiff's amended complaint will present a more concise and direct statement of facts and causations, "especially in regard to Centurions direct participation in the deliberate indifference to Plaintiff's serious medical needs."

11.   "Because section 1983 liability cannot be impose under a theory of respondent superior, proof of personal involvement is required for a supervisor to incur personal liability."; Beck v. Lafleur, 257 F.3d 764, 766 (8th Cir. 2001). (Prisoner must allege defendant personal involvement or responsibility for constitutional violations to state section 1983 claim); Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998) ("individual wrongdoing" must be shown); Colon v. Coughlin, 58 F.3d 865, 873 (2nd Cir. 1995).

12.   Plaintiff has satisfied these above mentioned requirements in his amended complaint and prays this Honorable court will deem the same.

13.   No parties have been served process and will not be prejudiced upon the filing of Plaintiff first verified amended complaint.

   **WHEREFORE**, Plaintiff prays this Honorable Court will accept the enclosed first verified amended complaint and if deemed to be sufficient pursuant to 28 USC § 1915 and 1915(A) after screening serve process on all defendants including Centurion of Florida, LLC.

Respectfully submitted,

/s/ _Scotty S. Diaz_

3

## CERTIFICATE OF SERVICE

I, hereby certify a true and correct copy of the foregoing Motion for Leave to Amend and Request to Reconsideration Terminating Centurion was placed into the hands of D.O.C. staff for the purpose of mailing to: U.S. District Court, Southern District of Florida, Office of the Clerk, (Rm. 8N09), 400 North Miami Ave., Miami, Florida 33128-7716 on this _17_ day of _AUGUST_ 2020.

/s/ _Scotty S. Diaz_
Scotty Santos Diaz, Pro-se
Dade Correctional Institution
19000 S.W. 377th Street
Florida City, Florida 33034

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
DADE COUNTY DIVISION

Legal Mail
Received

AUG 19 2020

Dade C.I.

S. Δ.

SCOTTY SANTOS DIAZ,
   Plaintiff,

v.                                                    Case No: 1:19-CV-24067-UU/LMR

Dr.. DELGATO, ET AL.
   Defendants.

                                                                    /

## PLAINTIFF'S FIRST VERIFIED AMENDED
## COMPLAINT UNDER 42 U.S.C. § 1983

1.     Plaintiff Scotty Santos Diaz, hereinafter "Plaintiff" or "Diaz", pro-se, pursuant to 42

U.S.C. §1983,   files this amended complaint against Defendants, Centurion of Florida, LLC., a

health care provider (hereinafter "Centurion"), Dr. Delgato, M.D. in his official and individual

capacities (hereinafter "Delgato"), Dr. F. Papillon, Chief health Officer, in his official and

individual capacities (hereinafter Dr. Papillon"), L.Re. Molina, P.A., Physicians Assistant in her

official and individual capacities (hereinafter "Molina"), Mr. Lafont, Pharmacist in his official

and individual capacities (hereinafter "Lafont"), Mr. M. Corrales, Assistant Warden, in his

official and individual capacities (hereinafter, "Mr. Corrales"), Mr. Mark Inch, Secretary, Florida

Department of Corrections, in his official and individual capacities, (Hereinafter "Mr. Inch").





## PRO-SE LITIGANT STATEMENT

2.      This complaint was prepared by inmate assistance due to the Plaintiff's current medical condition. **"Severe Primary Open-Angle Glaucoma" "Severe Stage."**

3.      However, an inmate law clerk is prohibited from representing another inmate in a judicial proceeding pursuant to: Chapter 33 of the Florida Administrative Code. See Ch. 33-501.301(i)(1)(2).

4.      The Plaintiff prays this Honorable Court will take into consideration his medical condition and appoint counsel due to exceptional circumstances. "Due to the Plaintiff's impaired vision which has hindered his ability to properly litigate."

5.      The Plaintiff submits this complaint as a pro-se litigant unskilled in the science of law and wishes his complaint and entreaties to this Honorable Court to be received as such. The Plaintiff moves this Court not to let or permit form to override substance or procedural technicalities to defeat [Fairness] and [Justice] in that the Court treat this complaint as whatever vehicle needed for the relief that the court deems just and proper. The Court stated in Hall v. Bellman, 935 F.3d 1106,. 1110 (10th Cir. 1991)

> "A pro-se litigants pleadings are to be construed and held to a less stringent standard then formal pleadings drafted by lawyers...if a court can reasonably read the pleadings to state a [valid claim] on which plaintiff's failure to cite a proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." (Citation Omitted) See also: Boag v. McDougal, 454 U.S. 363 (1982); Haines v. Keener, 404 U.S. 519 (1972); Gangloff v. Palm Springs hospital, 657 F.Supp. 739 (S.D. Fla. 1986)

6.    The Plaintiff's visions is impaired due to severe stage primary open angle glaucoma.

7.    The condition the Plaintiff is now in is due in part by the unwarranted delay in dispensing, Diaz glaucoma medication in a timely manner.

## INTRODUCTION

1.    This is an action for compensatory and punitive damages alleging that the Defendants, contrary to the Eighth and fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference to the recognized rights of the plaintiff Mr. Scotty Santos Diaz while he was incarcerated at Dade Correctional institution, beginning on November 7, 2018.

## JURISDICTION

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and Laws of the United States.

3.    Jurisdiction is also invoked pursuant to 28 U.S.C. § 1343 (a)(3), in that this action seeks to redress the deprivation, under color of state law, of the rights secured to Diaz by the Eighth and fourteenth Amendments to the United States Constitution.

4.    Plaintiff's claims for relief are predicated on 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under Color of State Law, of Rights, Privileges and Immunities secured to the Plaintiff by the Constitution and Laws of the United States and by 42 U.S.C. § 1988, which authorized the awarded of attorney fees and cost to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

3

## PARTIES

5.       Plaintiff, Scotty Santos Diaz (hereinafter "Diaz"), at all times material to this action was a resident of Dade County, Florida, incarcerated at Dade Correctional Institution.

6.                        **THE DEFENDANTS ARE:**

A. DEFENDANTS NAME: Centurion of Florida, LLC
   OFFICIAL POSITION: Health Care Provider
   EMPLOYED AT: Dade C. I.
   MAILING ADDRESS: 7700 Forsyth Blvd. St. Louis, MO. 63105

B. DEFENDANTS NAME: Dr. Delgato, M.D.
   OFFICIAL POSITION: Medical Doctor
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS: 19000 S.W. 377th Street, Florida City, Fl. 33034

C. DEFENDANTS NAME: Dr. Franck K. Papillon
   OFFICIAL POSITION: Chief health Official
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS: 19000 S.W. 377th Street, Florida City, Fl. 33034

D. DEFENDANTS NAME: L. Re. Molina, P.A.
   OFFICIAL POSITION: Physicians Assistant
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS: 19000 S.W. 377th Street, Florida City, Fl. 33034

E. DEFENDANTS NAME: Mr. Oscar Lafont
   OFFICIAL POSITION: Pharmacist
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS: 19000 S.W. 377th Street, Florida City, Fl. 33034

F. DEFENDANTS NAME: Mr. Mario Corrales
   OFFICIAL POSITION: Assistant Warden
   EMPLOYED AT:        Dade C.I.
   MAILING ADDRESS: 19000 S.W. 377th Street, Florida City, Fl. 33034

G. DEFENDANTS NAME:  Mr. Mark Inch
   OFFICIAL POSITION:  Secretary F.D.O.C.
   EMPLOYED AT:       Office of the Secretary
   MAILING ADDRESS:   501 South Calhoun Street, Tallahassee, Florida 32399

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of Administrative Remedies is requires prior to pursuing Civil Rights Actions, 42, U.S.C. § 1997 E (A). The Plaintiff has exhausted every issue in the following complaint and therefore has satisfied the requirements of the (PLRA) Prison Litigation Reform Act as well

## STATEMENT OF FACTS

1.        On November 7, 2018 the Plaintiff Scotty Santos Diaz was transferred to Dade Correctional institution due to Status and Classification. RE: Vision Impaired.

2.        Prior to the Plaintiff's transfer he was seen and evaluated by Dr. John A. Beneke, a Board Certified Glaucoma Specialist employed by Magruder Eye Institute located in Orlando Florida.

3.        Dr. Beneke prescribed the following post operative treatment plan to maintain elevated (IOP) levels and to prevent any further loss of vision and optic nerve damage. **Note**: Plaintiff was to be returned to Magruders Eye Institute in six months for the purpose of monitoring post operative treatment but Centurion and/or their agents or employees failed to carry out the specialist prescribed orders for follow-up treatment.

4.        Dr. Beneke ordered the prescription of: Timolol Maleaet to treat Intra Ocular Pressure (IOP), Prednisolon Solution to treat pain due to elevated (IOP) levels and Bausch and Lomb Advanced Eye Relief to treat Dry Eye Syndrome. It was further ordered that the Plaintiff receive periodic (IOP) checks to monitor elevation of pressure.

5

5.      On November 7. 2019 the Plaintiff was advised by L.P.N. K. Auguste, an intake Nurse, to place his medication refill slips into the K.O.P. window located at the Pharmacy. Plaintiff placed refill slips into K.O.P. window as directed.

6.      The Plaintiff had not received any of the medication for several weeks and began writing several grievances alleging that he was experiencing pain, blurry vision and irritation in both eyes, and did not have any medication to treat his glaucoma.

7.      On December 18, 2018 the plaintiff was seen by medical for the first time since arriving to Dade C. I. on November 7, 2018.

8.      The Plaintiff was seen by L. Re. Molina, a physicians assistant. During the appointment with Molina Plaintiff was told that if he was totally blind in his right eye he wouldn't have the need for glaucoma eye drops for that eye, and further insinuated that Diaz could see out of his right eye. **NOTE:** Elevated (IOP levels cause damage to optic nerves as well a pain and discomfort, "blindness does not change these symptoms." (See American Academy of Ophthalmology www.aao.org)

9.      Molina then requested the Plaintiff to produce all his current 'medical passes," which were as follows: (ADA) appliances - white cane/tap stick, straw hat, sunglasses, and protective footwear/boots, key lock, magnifier, knee brace, and cotton blanket, low tier and lower bunk. **Note:** Molina only renewed the Plaintiff's key lock and cotton blanket passes and refused to renew Diaz's (ADA) medical passes for his health care appliances.

10.     The Plaintiff explained to Molina that his ADA appliances were prescribed and issued to protect him from further injuries and that these devices and appliances were

6

recommended and prescribed by glaucoma specialist and medical doctors," <u>all to no avail".</u>

11.    Molina is a physicians assistant and without prior approval by a medical doctor has no authority to alter the Plaintiff's previously prescribed and approved medical passes, and ADA appliances.

12.    Similarly, a medical official who has only general knowledge about a particular field of medicine may not substitute her judgment for that of a specialist, "<u>such conduct amounts to deliberate indifference."</u>

13.    In any event Molina had no right nor reason to change the course of treatment and/or the prescribed medication previously ordered by specialist and medical doctors.

14.    On January 30, 2019 after Plaintiff had filed several more grievances alleging that Molina had taken his medical passes Diaz was finally seen by his primary care physician Dr. Delgato. Plaintiff immediately advised Delgato that Molina had refuse to renew his (ADA) and medical passes and that the Plaintiff had not receive any glaucoma eye drops in approximately three months.

15.    The Plaintiff explained in detail that his (ADA) appliances were prescribed and recommended by both the glaucoma specialist, John A. Benere and the site medical director at C.F.R.C. Dr. Jason Brenes Catinchi. **Note**: <u>Dr. John A. Beneke is the glaucoma surgeon whom performed surgery on Diaz and prescribed and recommended post operative treatment. See: Medical evaluation and treatment recommendation prepared by John A. Beneke/Magruder eye institute and received and date stamp by Jason Brenes Catinchi, MD. site medical director at C.F.R.C. on 9-26-18, "Diaz medical files."</u>

16.     Even after Dr. Delgato was personally advised by Diaz on 1-30-19 that L. Re. Molina had refused to renew his medical passes for (ADA) appliancs, "Delgato did nothing to assure that Diaz appliance's would be returned and the passes renewed.  In fact Delgato advise Plaintiff that his supervisor/Centurion had specific policies for medical passes.  Note: Plaintiff explained to Delgato that his medical (ADA) appliances were previously prescribed to protect the Plaintiff form further risk of injury and to assist him with moving about, "all to no avail".  <u>Dellgato's actions and/or inactions were an act of deliberate indifference towards Plaintiff's serious medical needs</u>.

17.     At the conclusion of Plaintiff's medical consult with Dr. Delgado on 1-30-19, Delgato renewed one pass.   Re: Low tier and advised Diaz that his glaucoma eye drops would be available at the pharmacy window in three to five days, and consult for optometry was signed.

18.     On February 13, 2019 Plaintiff was seen by optometry, an evaluation and (IOP) check was conducted and the intraocular pressure, (IOP) in Diaz left eye was (17) and the right eye was (58).

19.     Due to the substantial (IOP) elevation in both Diaz's eyes the optometrist ordered that Diaz's doses of glaucoma eye drops be doubled and that he be seen again for follow up within (30) days.  <u>See Consultants Report dated 2-13-19</u>.

20.     The Plaintiff waited several days to received the eye drops ordered by optometry and again nothing was dispensed.

21.    The Plaintiff filed several more grievances still alleging that he had not received any of his prescribed glaucoma eye drops.  Note:  <u>The Plaintiff made several attempts to verbally alert both medical personal and security that his eyes were in severe pain and that his vision was becoming blurry.</u>

22.    On 3-22-19 Diaz went to the (K.O.P.) Pharmacy window to inquire with the Pharmacist Mr. Lafont.  The Pharmacist checked his computer and told the Plaintiff that the advanced eye relief and prednisolone was discontinued, and that he had no Timolol.

23.    On March 26,  2019, the Plaintiff was seen again by Dr. Delgato.  Diaz told Delgato for the second time that no medication had been dispensed, and that everytime he spoke to the Pharmacist Mr. Lafont he was told that he had no medication/eye drops.

24.    The Plaintiff explained to Dr. Delgato that the optometrist evaluated him on 2-13-19 and due to the substantial (IOP) elevation the optometrist, Ms. Larson ordered that his glaucoma eye drops be doubled in dosage and made a note on the consultants report to make sure patient has refill supply due to the (IOP) levels.  <u>See Consultants Report Inmate Medical Files</u>.

25.    Plaintiff then asked Dr. Delgato why he had not been seen again by optometry as ordered to return to clinic in one month, "which was ordered on 2-13-19 approximately (42) days ago.

26.    Delgato then search Diaz medical file and found the optometrist consult for follow-up and realized that it had not been signed nor submitted for approval by him on January 30, 2019.

9

27.     Delgato then prepared another urgent consult for the Plaintiff to be seen by ophthalmology dated 3-26-19 signed by the Plaintiff and stamped by Delgato.   See Consultation Request 3-26-19, inmate medical files.   **NOTE:** the original appointment date was for 6-20-19 approximately (3) months later.

28.     After the Plaintiff filed several more grievance's alleging he had still not received any of his glaucoma medication it was brought to his attention by way of the responses received pertaining to his grievances by both medical an D.O.C. staff "that Diaz was not showing up to the Pharmacy to pick up glaucoma eye drops.  See Grievance Response Log # 1904-463-095.  Here both Assistant Warden Mario Corrales and Dr. F. Papillon (C.H.O.) both allege that Diaz was placed on the call-out and was a no show on three separate occasions.

29.     The [fact] that both Mario Corrales (A.W.P.) and Dr. F. Papillon (C.H.O) reviewed the Plaintiff's medical file clearly substantiates that both had subjective knowledge that Diaz had not received his glaucoma medication, both were alerted and given the opportunity to correct the Plaintiff issues and failed to do so.  See Grievance Log # 1904-463-095 Response.

30.     Plaintiff immediately submitted request for copies of the medical records, re: Pass for Appointment Call-outs to substantiate that he did [in-fact] show up to all of his call-out.  **NOTE:** The Plaintiff was unable to obtain the pass for appointment documents due to the improper distribution and distruction of said records.

31.     Once the Plaintiff was accused of not showing up to his call-out for K.O.P. medication he began requesting, that the Pharmacist sign his pass for appointment call-outs as required by the rule and Lafont would just refuse to sign the call-out.

32.     The Plaintiff then appealed grievance log #1904-463-095 to the Secretary of the

F.D.O.C. explaining in full detail that both Warden Corrales and Dr. F. Papillon C.H.O.

were accusing him of not going to his call-outs and most importantly failing to properly

distribute and sign pass for appointment call-outs as required by policy and procedure, all

to no avail.  This grievance was also denied.  <u>See Grievance Log # 19-6-18538 Response</u>.

33.     It was also noted in Plaintiff's grievance that the Pharmacist, Mr. Lafont was

distributing K.O.P. medication to the entire inmate population without having the inmates

sign for their med's, "also as required by policy and procedure."  **NOTE:** <u>These policies,</u>

<u>procedures and rules are to create an adequate record of events to protect the legal</u>

<u>interest of all parties</u>.

34.     On April 17, 2019 the Plaintiff was seen again by optometry.  **NOTE:** <u>This was</u>

<u>(70) days after the optometrist ordered that the Plaintiff be return to clinic in (30) days</u>.

35.     The optometrist performed another (IOP) check and the results were as follows:

Diaz's left eye (IOP) level had increased from (18) to (32) and Diaz right eye was still

above (50).  **NOTE:** <u>Even a physician or doctor with just general knowledge of severe</u>

<u>stage glaucoma would have noted the immediate medical attention needed to address the</u>

<u>Plaintiff's condition</u>.

36.     The Plaintiff advised Mr. Larson/optometrist that the medical department at Dade

C.I. was not following her orders for prescribed medication and that he had still not

received any glaucoma eye drops since his arrival to Dade C.I.

11

37.     The optometrist submitted an urgent consult for Plaintiff to be seen [A.S.A.P.] for (IOP) management due to Diaz not receiving eye drops from Pharmacy.  NOTE: Ms. Larson also for the second time ordered that both Timolol and Predforte be refilled A.S.A.P. and R.X. for Xalatan be added A.S.A.P. (See Consultants Report dated 4-17-19, inmates medical filed).

38.     On April 22, 2019 the Plaintiff declared a medical emergency because of severe pain and blurry vision.  Diaz explained to medical that Optometry prescribed Xalatan on April 17, 2019 and he had not received it.  The nurse advised Diaz that his order would be placed today and that Diaz could pick it up at the Pharmacy on the 24th of April 2019.

39.     On April 25, 2019 at 2:30 P.M. the Plaintiff declared another medical emergency again due to pain and blurry vision.  "At first Sgt. Martin denied Diaz access to medical and told Diaz that his Glaucoma is not life threatening," however, Diaz told Sgt. Upshaw, and Sgt. Upshaw contacted medical and was advised to send Diaz to medical immediately.

40.     Diaz explained to the nurse that he has been without his Glaucoma eye drops since November of 2018, and that Ms. Larson from Optometry had ordered and prescribed Xalatan, Prednisolon, Timolol and ?Bausch and Lomb Advanced Eye Relief.

41.     After a lengthy search the nurse was able to locate two of the four bottles of eye drops, (1) Timolol and (1) Prednisolon.  **NOTE:** The above mentioned eye drop, Timolol and Prednisolon are the [first] two bottles of Glaucoma medication the plaintiff received since being transferred to Dade C.I. on November 7, 2019 approximately 5½ months earlier.  The nurse was unable to locate the other two medications and advised Diaz she would make a note for the Pharmacist, Oscar Lafont.

12

42.     On May 1, 2019 Diaz went to the Pharmacy window and received (1) bottle of Predforte, (1) bottle of Xalatan and (1) bottle of liquid tears.  The Plaintiff again requested that Lafont sign his pass for appointment document, and again he refused. **NOTE:** This was the first time Plaintiff received glaucoma medication from the pharmacy window at Dade C.I.

43.     On May 3, 2019 Diaz went to the annual (ADA) meeting and made a "verbal complaint" advising the Warden Mario Corrales, Dena Tate (H.S.A.), Mr. Bowans Classification Supervisor and all the other members of staff representing both the Florida Department of Corrections and Centurion that the pass for appointment documents that are issued to both staff and inmates for the purpose of notifying inmates of their medical call-outs were not being signed nor distributed by the officers responsible for such duties, and that the passes for appointments were simply thrown in the garbage once the inmates call-out was made.

44.     Diaz further verbally advised the entire (ADA) committee that Oscar Lafont the Pharmacist was dispensing K.O.P. medication to the entire inmate population without having the inmate sign the receipt to create a record to substantive whether or not an inmate did in fact show up to receive his med's.  **NOTE: This action violates policy and procedure.**  "Diaz advised all of the medical personnel "verbally" that both his eyes were experiencing severe pain and discomfort." _ Pursuant to procedure #604.101 and ch. 33-210-201 F.A.C. vision impaired/blind inmates verbal complaints are to be accepted by staff as if in written form and, as such, official corrective action is required by staff.

45.     On May 14, 2019 Centurions legal counsel of record was contacted and made aware that Plaintiff had prepared an emergency medical injunction and was going to file it with the U.S. District Court.  **NOTE:** This action cause Centurion to expedite the urgent consult that was changed from 6-20-19 to 5-15-19 which was the following day.

46.     On May 15, 2019 the Plaintiff was transported to Larkin Multispecialty Clinic to be seen and evaluated by two ophthalmologist.  **NOTE:** This was Diaz first time seeing an ophthalmologist since September of 2018, approximately nine months

47.     During the evaluation on 5-15-19 both ophthalmologist perform several procedures such as ex-rays, visual fields and (IOP) inter ocular pressure checks.  NOTE: Diaz (IOP) in this right painful eye was (55) due to being without his glaucoma medication for approximately 51/2 months.  (See specialist report)

48.     Both ophthalmologist noticed something irregular in the Plaintiff's left eye and were unable to determine the nature at that time.

49.     Multiple stitches were removed from Diaz left eye that should have been removed four months earlier as ordered by the glaucoma specialist, John A. Beneke on September of 2018.  (See statement of facts paragraph (3))

50.     The specialist final orders were as follows: 1) Prescribe and dispense cyclopentolate hydrochloride opthalmic solution for pain, 2) Perform an intra ocular pressure check (IOP) every (30) days, and 3) If Diaz (IOP) elevates above (15) return to clinic (A.S.A.P.).  (See consultants report prepared on 5-15-19.)  **NOTE:** These orders were reviewed by Dr. F. Papillon on 5-17-19 as evidence by his own date stamp. (see consultants report prepared on 5-15-19)

51.     When the Plaintiff return to the institution he was never seen by medical as required. **NOTE:** when an inmate returns from an outside specialist consult and there has been orders recommending treatment and medication the inmate [must] be seen by a physician to discuss the course of the patients medical evaluation, treatment and change in condition. "However, Diaz's file was just placed in a routine stack of files and the Plaintiff was never seen by a physician upon his return to the institution as required."

52.     On May 21, 2019 Plaintiff declared a medical emergency again due to blurry vision, pain and discomfort. Diaz was seen by Nurse Roche and advised Ms. Roche that he was seen by the glaucoma specialist at Larkin Eye Clinic on May 15, 2019 and prescribed multiple glaucoma eye drops to maintain and lower eye pressure and treat pain due to elevated (IOP) levels. **NOTE:** Ms Roche took Plaintiff's medical file to show Dr. Delgato to verify what Diaz had just explained and when Ms. Roche return she advised Diaz that Dr. Delgato said to access sick-call if he was feeling bad. Again Delgato did nothing to insure that Plaintiff would receive his glaucoma medication.

53.     On May 22, 2019 Plaintiff filed an emergency grievance at the institution alleging that the medical providers, Centurion and/or there agents or employees were refusing to follow orders for treatment prescribed by the glaucoma specialist. NOTE: Diaz exhausted this emergency medical grievance to the highest authority as required, "all to no avail."

54.     During the month of June 2019 Diaz had injured both his feet on two separate occasions by once walking into a steal locker bolted to the floor, and another time by walking into a concrete step exiting the restroom.

 

15

55.     On July 1, 2019 Diaz went to sick-call and was seen by Nurse Kennedy, Diaz advised Ms. Kennedy that he was having allergic reactions to the medication cyclopentolate, explained that his eyes were in pains from elevated (IOP) levels, and that he had smashed his foot walking into a steal locker.

56.     Kennedy got a doctor, Dr. Peno , and Diaz told the doctor about the allergic reaction from the medication,  "Dr. Peno instead of notifying the glaucoma specialist just gave the medication back to Diaz and told Diaz to tell the specialist next time he seen him."

57.     On July 8, 2019 Plaintiff was seen again by optometry.   Ms. Larson the optometrist did an (IOP) intra ocular pressure check and the result were follows: Diaz left eye had increased to (28) and the right eye (52).   NOTE: The optometrist immediately wrote an urgent consult recommending that Diaz been seen by an ophthalmologist [A.S.A.P.].

58.     On July 24, 2019 Plaintiff was transported back to Larkin Clinic pursuant to optometrist urgent consult.

59.     During the evaluation Diaz explain to the glaucoma specialist that the pain is excruciating and cause extreme headaches, that he was seeing haloes, peripheral vision and seeing floaters.

60.     Doctor Jaffe the specialist prescribed Diaz several glaucoma eye drops and ordered that Diaz be return to the clinic in [six weeks] for evaluation of surface disease and pain, and if pain in Diaz right eye was worse or unchanged refer to Dr. Patipa for possible evisceration.  **NOTE:** Again for the second time when Plaintiff return to the institution he was not seen by any physician to discuss change in treatment and his

16

current condition, instead his file was again placed in a stack of routine files to be reviewed at a later date.

61.     On July 19, 2019 approximately five days after being evaluated by the specialist Diaz filed an emergency grievance explaining that: 1) he had not been seen by medical since returning from Larkin Eye Clinic, 2) Diaz had not received any of the glaucoma eye drops ordered by the specialist, and 3) medical had not returned Plaintiff's (ADA) appliances.  **NOTE:** An emergency grievance is to be responded to within (72) hours per chapter (33).

62.     On August 2, 2019 Plaintiff filed an emergency preliminary injunction/T.R.O. with the United States District Court in Miami, Florida.

63.     Plaintiff alleged that he was not being treated as previously diagnosed for severe stage primary open angle glaucoma.

64.     Diaz alleged that the Defendants, F.D.O.C. and/or there agents or employees specifically Centurion of Florida, LLC are denying him the treatment previously prescribed and ordered by outside specialist.   1) Failing to issue and/or dispense glaucoma medication.   2) Long delays in prescribed follow-up treatment.   3) The removal of previously prescribed and issued (ADA) health care appliances, ect.

65.     All these claims causing the Plaintiff severe pain, discomfort and irreversible injuries.

66.     On September 27, 2019 Plaintiff filed his initial civil complaint pursuant to Section 1983 alleging injury, pain, and suffering due to delayed treatment previously ordered by glaucoma specialist and board certified medical doctors, amounting to deliberate indifference towards serious medical needs.

17

67.     On or about October 1, 2019 Plaintiff file a Notice of Exigent Circumstances with the U.S. District Court.

68.     On October 9. 2019 Plaintiff was transported to Bascom and Palmer Eye Institutes emergency room and treated for extreme pain and elevated (IOP) levels. **NOTE:** <u>This action due directly to the courts intervention</u>.

69.     Bascom performed an (IOP) check and Diaz's intra ocular pressure had elevated to (58) which was the cause of the pain and discomfort.

70.     Bascom wrote two prescriptions for pain reducing eye drops and one for a pressure reducing eye drop, then ordered that the Plaintiff be seen at Larkin Eye Clinic by his consulted glaucoma specialist for follow-up treatment within (30) days.

71.     On October 11, 2019 the U.S. Magistrate Judge issued her Report and Recommendation stating that the Plaintiff had plead sufficient facts to warrant further inquiry. **NOTE:** <u>An evidentiary hearing was scheduled for October 29, 2019</u>.

72.     On October 14, 2019 Plaintiff was called to the medical department for a sick-call consult, and seen for the second time by Nurse Kennedy in reference to injuries to his feet and ankles.

73.     Due to the extent of the injury Doctor Papillon ordered an ex-ray and prescribed 500 mg. Cipro Antobiotic for ten days due to infection. **NOTE:** <u>This was the second or third time Diaz had injured his feet since Dr. Delgato and R. Le Molina refused to renew his medical passes for protective footwear.</u>

74.     The Plaintiff on this same day 8-11-19 was referred to Dr. Lankenau for an evaluation and recommendation for protective footwear.

18

75.     After Lankenau's evaluation it was her professional opinion based on the [fact] that Diaz is totally blind in his right eye and visually impaired in the left eye due to "severe stage primary open angle glaucoma," that she recommends cliff walker shoes and that Diaz would be placed on the call-out as soon as these shoe's arrived.   See chronological record of health care in Plaintiff's medical file.

76.     On October 15, 2019 the following day Dena Tate, (H.S.A.) e-mailed Plaintiff's request for footwear to Marlene Hernandez at Team Centurion for approval. **NOTE**: Marlene Hernandez operates directly out of Centurion, Florida Regional Office, her E-mail mmHernandez@TeamCenturion.com is also known as CenturionManagedCare.com.

77.     On October 15, 2019 just a few hours later Marlene Hernandez denied the request for protective footwear based on the emergency room visit at Bascom and Palmer on October 9, 2019.  **NOTE:** On October 9, 2019 Plaintiff was sent to the emergency room at Bascom and Palmer specifically for severe pain due to elevated eye pressure IOP). Bascom and Palmer did not conduct any evaluation in regards to protective footwear, in fact Bascom and Palmer is not the Plaintiffs primary care providers, their treatment was purely an emergency situation.

78.     This was just another example of Centurions direct participation in refusing to adhere to the previously prescribed orders of their own appointed physicians and specialist, and another act of deliberate indifference towards Diaz serious medical needs.

79.     On October 29, 2019 an evidentiary hearing was conducted by way of telephonic hearing.

80.     During the hearing Plaintiff was unaware of the Defendant's who were present at the hearing to give testimony, Plaintiff had to inquire as to whether he had personally

19

received treatment from any of the Defendant's giving testimony. **NOTE:** <u>Plaintiff advise the court that he was taken to Bascom and Palmer's emergency room on October 9, 2019 immediately following the courts order to acknowledge Plaintiff's case</u>.

81.   Plaintiff further explain to the court that the defendants had not returned his protective footwear and that he had not yet received the pain medication (Prednisolone).

82.   After short discussions the Plaintiff was advised that he was scheduled to be seen by an ophthalmologist at Larkin Specialty Clinic on October 31, 2019 and to discuss both protective footwear and pain medication with the glaucoma specialist. "The hearing then ended."

83.   On October 31, 2019 Plaintiff was transported to Larkin Specialty Clinic. The Plaintiff was seen and evaluated by Jacqueline E. Smith, glaucoma specialist.

84.   After Plaintiff's evaluation was complete the specialist prescribed the following treatment and medications, Atropine and Prednisolone for pain, 500 mg. Diamox Capsuls for Pre Alcohol injection, protective footwear due to low vision and that the Plaintiff be return to the specialty clinic in [four weeks or sooner] for the porpuse of alcohol injection/pain management. **NOTE:** <u>Diaz was not return to the clinic till January 16, 2020 approximately 2 1/2 months later</u>.

85.   This was one of many excessive delays in the Plaintiff's prescribed follow-up treatment. **NOTE:** <u>Outside facilities scheduling priorities may not be used as an excuse not to provide necessary care promptly</u>.

86.   On October 31, 2019 the same day Plaintiff was seen by the specialist at Larkin Clinic the district court issued the Report of Magistrate Recommending that the

injunction be dismissed because "since the filing of the motion Plaintiff had receive the requested relief."

87.     On November 8, 2019 Plaintiff filed objections to the Report of Magistrate alleging his concern that the Defendants would simply return to there challenged conduct, that the Defendants had not returned health care appliances IE. "Protective Footwear," and that these request were also part of the Plaintiff's relief sought in the injunction.

88.     On November 25, 2019 the Honorable District Judge issued an order to show cause for the Defendants to respond to Plaintiff's objections.

89.     In the body of said order the Honorable Judge stated the following: <u>Accordingly, IT IS ORDERED AND ADJUDGED that the Defendants shall include with their Response to the objections, the status of the medical treatment being received by the Plaintiff, including the status of Plaintiff's protective footwear and whether such footwear has been return to him.</u>

90.     On November 27, 2019 Mark Inch/Secretary for the (F.D.O.C.), Ashley Brook Moody, Attorney General, Maria Guitian Barker, Assistant Attorney General issued their response to order to show cause with the participation of Assistant Warden Mario Corrales by way of sworn affidavit.

91.     The Defendants named above in paragraph (90) allege in the response the following: **First**-the Plaintiff failed to state a cause of action, 'this requirement was clearly satisfied by the legal analysis in the Honorable Magistrate's Report and Recommendation issued on October 11, 2019." **Second**-they allege Diaz failed to exhaust his administrative remedies required by the PLRA) Prison Litigation Reform Act, Diaz has stated in both the body of the injunction and the body of his initial civil

complaint that he had exhausted pursuant to the (PLRA) and discovery will substantiate as such. **Third**-attached to the Defendant's Response was an affidavit sworn to by Assistant Warden Mario Corrales stating that he is familiar with the Plaintiff Scotty Santos Diaz, DC#670614, and that he had inspected the medical records file of inmate Diaz and attached copies of the true and correct most recent entries of Diaz medical file. NOTE: This was sworn to under oath on November 26, 2019. Had the most recent records been presented to this Honorable Court as evidence, it would have been the report and evaluation conducted by the glaucoma specialist/treating doctor on October 31, 2019, which clearly stated Diaz's decreased medical condition and the prescribed recommendation for protective footwear. **NOTE:** It is a [**fact**] and discovery will conclude that all of the alleged claims submitted by the Defendants mentioned in paragraph (90) are untrue based on incorrect, incomplete records and substantiated through false testimony by Warden Corrales in a sworn affidavit.

92.     The entire Response was nothing but an attempt to mislead this Honorable Court in an effort to have Plaintiff's injunction dismissed without just cause and prejudice Plaintiff thereby.

93.     On December 2, 2019 the Honorable District Court Judge issued an order adopting the Magistrate's Report and dismissed the Plaintiff's injunction as "moot" solely based upon the above mention incomplete, incorrect and untrue testimony that was submitted by Defendants in the Response to show cause order. HOWEVER, the order further advise the Plaintiff, "To the extent Plaintiff seeks to raise additional issues regarding the Defendants' alleged conduct he may do so in his primary lawsuit," (Diaz v. Centurion of Florida, LLC et al, Case No. 19-CV-24067-UU").

94.     On December 14, 2019 Plaintiff filed a formal grievance advising the medical provided, Dr. Papillon and the F.D.O.C. that he had not been return to the clinic for prescribed follow-up treatment, and that Dr. Papillon had prescribed "Diamox" to Diaz with knowledge that Diaz is highly allergic to large doses of sulfa.

95.     Diaz became extremely sick, and his body became covered with a rash and both eyes were badly irritated.

96.     Diaz declared multiple medical emergencies and went to sick-call on at least two occasions just to be denied any medical attention for the allergic reactions caused by the medication prescribed by Dr. Papillon.   **NOTE:** The Plaintiff requested that the ophthalmologist be notified immediately and his request was denied.

97.     On January 2, 2020 Plaintiff appealed his formal grievance to the Secretary's office alleging both medical and security staff was refusing to treat his symptoms caused by the allergic reactions and that he had not been seen by ophthalmology as previously ordered by the specialist.   See grievance log number -20-6-00880.   Plaintiff's grievance was denied on January 23, 2020 and yet after Diaz alerted both Dr. Papillon and the F.D.O.C. of the adverse effects cause by the medication not one of the Defendants notified the glaucoma specialist at Larkin Multispecialty Clinic as required by the rule.

98.     On January 16, 2020 the Plaintiff was finally tranferred back to Larkin Eye Clinic for the follow-up treatment that was specifically ordered to be in [four weeks or sooner] on October 31, 2019 approximately (2 ½) months later.   **NOTE:** Another example of the medical provider Centurions unnecessary delays in treating Diaz pre-diagnosed serious medical condition.

23

99.     The Plaintiff was given an extensive evaluation by Dr. Michael Patipa who first noted that the patient Plaintiff was suppose to have been seen for follow-up over two months prior to the instant date.

100.     Dr. Patipa after a full evaluation advised the Plaintiff of the remaining options due to Diaz current condition and further advised the Plaintiff that he does not recommend any alcohol injection at this point, "due to scaring of the tissue."

101.     After lengthy discussions by both Plaintiff and Dr. Patipa it was concluded that the removal of Diaz right eye would be forthcoming.

102.     Dr. Patipa's specific orders for prescribed treatment are as follows:  1) Prescribe and continue Cosopt, 2) Prescribe and continue Xalatan.  **NOTE:** The medical providers have advised Plaintiff of [no refills] in March of 2020. 3) Prescribe Cyclogyl for pain, **NOTE:** Medical providers never prescribed Cyclogyl for pain.  4) Prescribe prednisolone for pain. 5) Prescribe 650 mg. Tylenol for pain, one tab every 4 to 6 hours, no stop date. **NOTE:** Re L. Molina gave Plaintiff a five day supply of Tylenol with no refill, and finally to be returned to clinic for retina evaluation as soon as available / "Return Sooner".  **NOTE:** At the time of this instant pleading it has been over (8) months since these specific orders were wrote, Centurions utilization management continues to delay treating Diaz pre-diagnosed serious medical condition, thus subjecting the Plaintiff to unwarranted pain and suffering without any rational explanation.

103.     Plaintiff states from the onset, on September 9, 2018 the Plaintiff was seen and evaluated by Dr. John A. Beneke of Mugruder Eye Institute in Orlando, Florida, Dr. Beneke is a board certified glaucoma specialist who is responsible for the preservation of

24

Diaz vision in his left eye and post operative treatment regimen prescribed to insure Diaz condition would remain stable and prevent any further damage to either of Diaz's eye's.

104.    During the last consulation with Dr. Beneke the Plaintiff was advised that as long as he adhered to the prescribed treatment plan his condition would remain stable.

NOTE: When Plaintiff arrived to Dade C.I. his (IOP) levels were stable, pain management acceptable, and there was no change in patient's [amsler grid]. "This is clearly substantiated by record evidence."

105.    As a direct and proximate result of the above mentioned defendants deliberate indifference toward Diaz's serious medical needs, the inadequate treatment and/or "unnecessary delay" in the treatment of Diaz's sever stage Glaucoma, Diaz suffered further damage to the optic nerves, pain, discomfort, substantial loss of more vision in his left eye, the forthcoming removal of his right eye causing, disfigurement thus violating Diaz's Eighth and Fourteenth Amendment Rights not to be subjected to such cruel and unusual punishment. NOTE: Prior to the Plaintiff being transferred to Dade C.I. for post operative treatment his (IOP) levels were acceptable in both eye's, Pain management was acceptable. Now due to the (51/2)  month delay in dispensing the Plaintiff's previously prescribed Glaucoma Medication as well as the unnecessary delay in follow-up treatment by an Ophthalmologist as Plaintiff's medical condition would require, "His Severe Stage Glaucoma has been diagnosed as uncontrolled."

106.    Documented medical records will in-fact substantiate that Diaz went a period of 5 ½ months without any of the prescribed medication that was ordered by Glaucoma Specialist to "Prevent" any further loss of vision, and further elevated (IOP) levels, and to control pain, and/or any further damage.

107.     Both Centurion their agents and employees the Florida Department of Corrections their agents and employees who have participated in the Plaintiff's medical treatment have shown deliberate indifference to the Plaintiff's pre-diagnosed serious medical needs, thus violating Diaz's Eighth and Fourteenth Amendments to the United States Constitution.

## IN CONCLUSION

The Plaintiff alleges that due to both security and medical [Centurions] failure to timely prescribe and/or dispense his glaucoma medication, failure to carry out the specialist orders in a timely manner, failure to properly record the distribution of K.O.P. medication pursuant to policy and procedure, failure to properly create a record of events in order protect the legal interest of all parties involved, and the complete disregard and destruction of records that are provided to create and maintain sufficient information to identify the patient, support the diagnosis, justify the treatment and document the course and results of the treatment accurately, has cause the Plaintiff extreme pain and suffering over the course of one year, has caused the diminished and/or decreased vision in Diaz surgically repaired left eye and ultimately the removal of Diaz right eye causing permanent disfigurement.

## CAUSES OF ACTION

## COUNT I – 42 U.S.C. § 1983 CLAIM AGAINST CENTURION

1)     Diaz Hereby Incorporates by reference the allegations contained in paragraphs 1 through 107 above; as if set forth in full herein.

2)     Count (I) is brought against Defendant Centurion pursuant to 42 U.S.C. Section 1983 for deliberate indifference to the critical medical needs of Diaz, as an individual with a

26

primary Open Angle Glaucoma Abnormal-to-sever medical condition that required the previously prescribed treatment plan recommended by Dr. John A. Beneke to prevent any further substantial health deterioration, pain, and loss, of vision, and/or irreparable damage.

3)     Centurion and/or its agents or employee's, knew on November 7, 2018 that Diaz had Primary Open Angle Glaucoma Abnormal to sever condition and that if the condition was not adequately monitored and treated it could result in serious irreparable harm, pain and even loss of sight.

4)     By December 18, 2018 Centurion and/or its employees or agents, knew Diaz was not receiving the medication prescribed to prevent any further loss of vision, pain and/or deterioration in both eyes.

5)     Despite knowledge of Diaz's serious medical needs, Centurion and/or its employees and agents were deliberately indifferent to those serious medical needs in failing to provide the necessary medication care and treatment to Diaz in a timely manner as previously prescribed by a board certified Glaucoma specialist and certified Optometrist.

6)     Centurion and/or its employees or agents knew that taking no action and/or insufficient action could result in the rapid and permanent deterioration of Diaz's health, pain and further loss of vision in both eyes.

7)     Plaintiff alleges it was Centurion's custom, policy, procedure and\or practice to outright deny timely and adequate medical treatment due to utilization managements unexplained and excessive delays in treating an inmate's pre-diagnosed serious medical needs, and Marlene Hernandez who operates directly through Centurions Regional Office denying Plaintiffs protective footwear knowing that multiple specialist had recommended

such medical appliance to prevent Diaz from incurring any further damage to both his feet and ankles.

8)      As a direct and proximate result of utilization management/Centurion's delay and/or denial of medical treatment, the deliberate indifference towards Diaz's serious medical needs, the timely and inadequate treatment of his Diaz's Glaucoma, the return of protective footwear, Plaintiff suffered more damage to the Optic Nerves due to elevated (IOP) levels, injuries to both feet and ankles, a substantial decrease in vision to his left eye, the forthcoming removal of his right eye and over a year and a half of pain, discomfort mental anguish all in in violation of Diaz's Eighth and Fourteenth Amendment Rights.

9)      As a result Diaz suffered damages in an amount to be determined at trial for his injury resulting pain, suffering, disability, and disfigurement due to the removal of his right eye, mental anguish, loss of capacity for the enjoyment of life, expenses for his care and treatment in an effort to alleviate and cure his injuries, and will continue to incur additional expenses in the future, loss of earnings, loss of ability to earn money. The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future. Diaz also seeks reasonable attorney fees and cost, pre-judgment interest and further relief as the court deems appropriate.

## COUNT II – 42 U.S.C. § 1983 CLAIM AGAINST DR. DELGATO

1)      Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 107 above, as if set forth in full herein.

2)      Diaz charges that Dr. Delgato, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to provide necessary and recommended care and treatment in a timely

28

manner to Diaz after January 30, 2019 by not assuring that Diaz receive the Glaucoma medication previously prescribed by Dr. Beneke a Glaucoma specialist to prevent any further damage to Diaz's eye's, "such as Elevated Intra Ocular Pressure (IOP), pain, discomfort or loss of vision. Even after Delgato was advised by Optometry on February 5, 2019 that Diaz's (IOP) was elevated way above normal Diaz was not seen by an Ophthalmologist till May 15, 2019 approximately (3 ½) months later. Dr. Delgato denied Diaz medical care by an outside specialist "In a timely manner" as Diaz condition would clearly require, purely for economic reasons.

3)      Plaintiff alleges this failure to take timely action by Dr. Delgato was an exercise of deliberate indifference to the health, safety and welfare and the Constitutional Rights of Diaz under color of State law.

4)      Dr. Delgato, with full knowledge of the unconstitutional nature of his actions, agreed to and did exercise deliberate indifference to the safety and health of Diaz which eventually resulted in further optic nerve damage to both eyes, Elevated Intra Ocular Pressure, substantially diminished vision in his left eye and the forthcoming removal of his right eye through the course of neglect from November 7, 2018 until he voluntarily left Centurion in 2019.

## COUNT III – 42 U.S.C. § 1983 CLAIM AGAINST DR. F. PAPILLON

1)      Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 107 above, as if set forth in full herein.

2)      At all times relevant, Dr. F. Papillon was the Chief Health Officer employed by Centurion of Florida, LLC at Dade Correctional Institution, and his position was to insure that the doctors and nurses under his supervision properly perform their duties.

29

3)        Diaz charges that Dr. F. Papillon, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to ensure that his staff and/or his self  provided Diaz with the necessary and recommended care and treatment in a timely manner after "being advised" that Diaz was not receiving the treatment recommended to prevent any further damage and/or injury. Dr. Papillon had an ethical responsibility to ensure that Diaz received the proper care and treatment pursuant to the policies of Centurion to deny medical care for purely economic reasons. Specifically, by failing to insure that Diaz receive his glaucoma eye drops in a timely manner and refer Diaz to an outside Glaucoma specialist in a timely and expeditious manner as his condition would require, "even though Dr. Papillon was aware of the prior diagnosis by Optometry on February 5, 2019."

4)        This failure to take action by Papillon was an exercise of deliberate indifference to the health, safety and welfare and Constitutional rights of Diaz under color of State Law.

5)        Dr. F. Papillon, with the full knowledge of the unconstitutional nature of his actions, agreed to and did exercise deliberate indifference to the safety and health of Diaz which eventually resulted in further optic nerve damage to Plaintiff's left eye and the forthcoming removal of Diaz right eye due to the severe pain caused by highly elevated (IOP) levels through the course of neglect from November 7, 2018 through July of 2020, and on a continuing basis.

30

## COUNT IV – 42 U.S.C. § 1983 CLAIM AGAINST L. RE. MOLINA P.A.

1)      Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 107 above, as if set forth in full herein.

2)      At all times relevant, L. Re. Molina P.A. was the physician's assistant employed by Centurion of Florida, LLC at Dade Correctional Institution.

3)      Diaz charges that L. Re. Molina P.A., contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised Deliberate Indifference by failing to provide medical care and treatment in a timely manner to Diaz after December 18, 2018.

4)      Molina denied Diaz his previously prescribed (ADA health care appliances which ultimately subjected Diaz to injury, pain and suffering.

5)      The failure to take action and adhere to the Plaintiff's previously prescribed treatment recommended by a Board Certified Glaucoma Specialist by L. Re. Molina P.A. was an exercise of deliberate indifference to the health, safety and welfare and Constitutional Rights of the Plaintiff under color of law.

6)      L. Re. Molina P.A. with the full knowledge of the Unconstitutional nature of her actions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

## COUNT V – 42 U.S.C. § 1983 CLAIM AGAINST MR. LAFONT

1) Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 107 above, as set forth in full herein.

2) At all times relevant, Mr. Lafont was the pharmacist employed by Centurion of Florida, LLC at Dade C. I.

3) Diaz charges that Mr. Lafont, contrary to the Eighth and Fourteenth Amendments to the United States Constitution knowingly and willfully exercised Deliberate Indifference by failing to follow Policy and Procedure in the distribution and recording of Diaz's Glaucoma eye drops.

4) The failure to dispense and properly record K.O.P. medication by Lafont was an exercise of Deliberate Indifference to the health, safety, welfare and Constitutional Rights of the Plaintiff under the color of State law.

5) Mr. Lafont with the full knowledge of the Unconstitutional nature of his actions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

32

## COUNT VI – 42 U.S.C. § 1983 CLAIM AGAINST M. CORRALES

1)      Diaz hereby incorporates by reference the allegations contained in paragraphs 1 though 107 above, as set forth in full herein.

2)      At all times relevant Mr. Corrales was the Assistant Warden of Programs employed by the Florida Department of Corrections at Dade Correctional Institution.  He is legally responsible for the operation of Dade C.I. and for the welfare of all inmates at Dade C.I.

3)      Diaz charges that Mr. Corrales, contrary to the Eighth and Fourteenth Amendments to the United States Constitution knowingly and willfully exercised Deliberate Indifference by failing to ensure that his staff follow and adhere to the Policy and Procedure in the proper distribution and recording of medical records.  Corrales was alerted of Diaz medical condition through multiple grievances which he denied.   Mr. Corrales also knowingly submitted false testimony to the U.S. District Court in a sworn affidavit on November 26, 2019, which effected the return of Plaintiff's (ADA) healthcare appliances.

4)      The failure to correct these violations of Policy and Procedure after Corrales was made aware of these violations; was an exercise of Deliberate Indifference to the Plaintiff's need for the requested records, and Constitutional Rights under the color of State law.

5)      Mr. Corrales with full knowledge of the Unconstitutional nature of his actions and/or inactions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

## COUNT VII – 42 U.S.C. § 1983 CLAIM AGAINST MARK INCH

1)      Diaz hereby incorporates by reference the allegations contained in paragraphs 1 through 107 above, as set forth in full herein

33

2)        At all times relevant, Mr. Mark Inch was the Secretary for the Florida Department of Corrections employed by the State of Florida in Tallahassee Florida.  He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Dade C.I.

3)        Diaz charges that Mark Inch contrary to the Eighth and Fourteenth Amendments to the United States Constitution knowingly and willfully exercised Deliberate Indifference by failing to ensure his staff and/or agents adhered to the Policy and Procedure at Dade Correctional Institution.  Diaz appealed several grievances to the Secretary alerting him of his medical condition, and the violations of policy and procedure by his employees, and/or agents.

4)        By failing to ensure the employees, staff and/or agents adhered to Policy and Procedure at Dade Correctional Institution by Mr. Mark Inch was an exercise of Deliberate Indifference and violation of Diaz's Constitutional Rights under the color of law.

5)        Mark Inch with full knowledge of the Unconstitutional nature of his actions and/or inactions agreed to and did exercise Deliberate Indifference to the safety and health of Diaz.

## **<u>RELIEF REQUESTED</u>**

**WHEREFORE**, Plaintiff Scotty Santos Diaz, respectfully prays this Honorable Court for entry of Judgment awarding him the following relief:

A. A declaration that the acts and omissions of the Defendants described herein violated Diaz's Eighth and Fourteenth Amendment protection from cruel and unusual punishment through Deliberate Indifference.

B. Compensatory damages in the amount of $25,000 against Defendant Centurion.

34

C.   Compensatory damages in the amount of $10,000 against each named Defendant in their
     individual capacities

D.   Punitive damages in the amount of $10,000 against Defendant Centurion.

E.   Punitive damages in the amount of $10,000 against each named Defendant in their
     Individual capacities.

F.   Recovery of all fees and costs of this action

G.   Any further relief this Honorable Court deems just, proper and equitable.

Plaintiff respectfully demands a trial on all issues so triable.

Respectfully Submitted

/s/ *Scotty S. Diaz*

Scotty Santos Diaz

## **VERIFICATION**

I AFFIRM UNDER PENALTY OF PERJURY THAT THE FOREGOING DOCUMENT

IS TRUE AND CORRECT.

Respectfully Submitted

*Scotty S. Diaz*

Scotty Santos Diaz
Dade Correctional Institution
19000 S.W. 377th Street
Florida City, Fl. 33034

Scotty Santos Diaz, 410614

Dade Correctional Institution

19000 S.W. 377 Street

Florida City, FL. 33034

AUG 19 2020
Legal Mail Received
Dade C.I.
S.D.

LEGAL MAIL

United States District Court
Southern District of Florida
Office of the Clerk, (Rm. 8N0
400 North Miami Ave.
Miami, Florida. 33128-7716